IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02009-WYD-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

and

LATASHA PUTNEY,

        Plaintiff Intervenor

v.

PROFESSIONAL BUREAU OF COLLECTIONS, INC.

and

PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC.,

        Defendants.

---

**DEFENDANTS PROFESSIONAL BUREAU OF COLLECTIONS, INC. AND PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF PLAINTIFF'S MEDICAL RECORDS**

---

Defendants, Professional Bureau of Collections, Inc. and Professional Bureau of Collections of Maryland, Inc. (collectively "PBC"), by and through Kristi Blumhardt and C. Adam Foster of McElroy, Deutsch, Mulvaney & Carpenter, LLP, hereby submit their Reply Brief in Support of Motion to Compel Production of Plaintiff's Medical Records (Sealed Docket No. 57; Public Docket No. 64), and state as follows:

## I.     Introduction

Plaintiffs raise two principal arguments in opposition to production of unredacted copies of Putney's medical records, asserting that the records are not relevant to the claims in this case and that they are protected by a generalized right to "privacy." Plaintiffs do not define the contours of the asserted privacy right, and to a significant extent Plaintiffs' privacy arguments merge into the relevance debate. PBC is at a disadvantage with regard to analyzing the relevance of records that Putney has refused to produce, but notes that it is entitled to discovery of any information "reasonably calculated to lead to the discovery of admissible evidence" under F.R.C.P 26(b)(1). Putney appears to argue that PBC is required to take her counsel's assertion that the records are not relevant at face value, as opposed to actually reviewing the records in order to make an independent judgment regarding their relevance. This argument is contrary to the broad scope of discovery under the Federal Rules of Civil Procedure, and the notion that each party should be allowed to prepare and present their own case as they see fit.

## II.    Putney's Medical Records Are Relevant

Putney's discrimination claim is premised on the physical condition of her pregnancy, and her damages claims appear driven by the mental anguish and psychological harm that she claims she suffered from the alleged discrimination. Although Plaintiffs focus on the relevance of medical records related to her pregnancy, PBC's Motion to Compel asked this Court to order Putney to disclose copies of all of her medical records for the time period from five years before the termination of her employment with PBC through the present. PBC requested those records because they are relevant to disputed issues involving Putney's physical and mental condition,

namely her baseline level of physical and mental health prior to her termination with PBC, and whether Putney can reasonably attribute any changes to her health to the alleged discrimination.

Plaintiffs now state that their prior statements that Putney suffered aggravation of pre-existing mental conditions were mistaken,[1] and that Putney is only claiming "garden variety" damages for emotional distress.[2]  Plaintiffs do not explain why these statements would negate the relevance of records showing Putney's pre-termination physical and mental state and whether her condition changed after PBC terminated her employment.  If the jury decides the threshold question of whether PBC terminated Putney because she was pregnant in Plaintiffs' favor then it will be required to determine whether Putney suffered recoverable mental distress damages as a result of her termination.  The Plaintiff EEOC's own guidelines note that emotional distress damages should not be presumed and are generally proven by presenting evidence of physical manifestations of emotional harm, stating:

> An award for emotional harm is warranted only if there is sufficient causal connection between the respondent's illegal actions and the complaining party's injury. See Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977). *The discriminatory act or conduct must be the cause of the emotional harm. The claim of emotional harm will be seriously undermined if the onset of symptoms of emotional harm preceded the discrimination.*

"Enforcement Guidance: Compensatory and Punitive Damages" *available at*: http://www.eeoc.gov/policy/docs/damages.html (emphasis added)

---

[1] Curiously, both the EEOC and Putney made the same mistake in their separate disclosures dated December 20, 2007 and January 2, 2008, respectively.  Plaintiffs' June 30, 2008 Opposition to the Motion to Compel is the first time that Plaintiffs have clarified on the record that these statements in their previous disclosures were mistaken.

[2] Colorado courts have held that plaintiffs in bodily injury cases do not waive the state statutory physician-patient privilege for their entire medical history by making "garden variety" claims for pain and suffering resulting from their physical injuries. *See*, *e.g.*, *Weil v. Dillon Companies, Inc.*, 109 P.3d 127 (Colo. 2005).  These holdings make sense in cases where the plaintiff suffers a physical injury that would be painful to a normal person, but do not make sense in cases where the Plaintiff alleges purely emotional harm.

As the *EEOC v. Woodmen of the World Life Ins. Soc'y*, 2007WL649298 *1 (D. Neb. 2007) opinion attached to Plaintiff's Brief in Opposition (Docket No. 92) notes, "[r]elevancy is to be broadly construed for discovery issues" and "[d]iscovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action." The *Woodmen* court declined the plaintiff's request to limit discovery to information associated with her employment, noting that the defendant was entitled to discovery of information related to the plaintiff's "mental health prior to her employment to defend against the plaintiff's assertion that the defendant's conduct caused emotional distress at or after the time of employment" and that "information in the records may shed light on other contributing causes of [plaintiff's] clams of emotional distress." *Id.* at *3. Under the facts of that case, the *Woodmen* court held that the plaintiff's gynecological records were not relevant to her allegations of gender discrimination, sexual harassment, hostile work environment and retaliation. The instant case is distinguishable because Plaintiffs allege that Putney was fired because she was pregnant rather than because she was a poor employee, thus putting her pregnancy directly at issue and giving rise to PBC's need for unredacted copies of her gynecological records.

Furthermore, Plaintiffs have never repudiated counsel's assertion in a January 10, 2008 letter that "*Ms. Putney could not afford to seek medical treatment for the depression and anxiety she experienced* and thus does not possess any medical notes or invoices." (Berumen letter, attached as Exhibit D to Motion to Compel) (emphasis added) It appears that Plaintiffs' true argument regarding emotional distress damages is not that Putney did not seek mental health

4

treatment because she did not need it, but rather that she did not seek treatment because she could not afford it.

Putney was seeing medical care providers during the time of the alleged mental distress and PBC should have full access to their records to determine whether she discussed any issues related to her damages claims with those providers. Putney's medical records are relevant to whether mental health treatment would have been reasonable and necessary to treat Putney's alleged emotional distress, whether Plaintiff's contention that she could not afford mental health treatment is plausible in light of the medical treatment that she actually did receive, and whether Putney's alleged emotional distress is properly attributable to physical or mental health problems unrelated to her employment with PBC. For instance, PBC's Response to Plaintiffs' Motion for Protective Order (Docket No. 78) discusses Putney's co-workers' testimony that she brought illegal drugs to work, sold illegal drugs and used them at work. PBC is entitled to review all records relevant to whether Putney's mental stress is more properly attributed to drug use or other personal issues unrelated to her employment. In sum, PBC needs Putney's medical records to establish her baseline condition, to evaluate her damages claims; and to impeach her if she testifies that she did not have emotional problems or physical manifestations of stress prior to losing her job, or if she testifies that she believed that she required mental health treatment after she was fired but did not know where to turn because she could not afford treatment.

### III. Putney's Medical Records Are Not Protected by a Privacy Privilege

In essence, Plaintiffs argue that discoverable information regarding Putney is like a small island within a vast sea of "privacy." This view ignores the fact that there is no generalized

privacy privilege under federal common law,[3] and is diametrically opposed to the permissible scope of discovery under F.R.C.P 26(b)(1). Plaintiffs concede that they are not entitled to withhold records on the basis of physician-patient privilege, yet appear to argue that PBC is required to take counsel's statement that Putney's medical records are not helpful to PBC's defense at face value, without having the opportunity to inspect unredacted copies of the actual records. Plaintiffs' position is not supported by Tenth Circuit precedent, and is contrary to the logic of *Dixon v. City of Lawton*, 898 F.2d 1443, 1450 (10th Cir. 1990), which held that the psychotherapist-patient privilege did not apply in a case where the plaintiff made a claim for emotional distress damages that her son allegedly suffered prior to his death.

As discussed above, Plaintiffs' counsel were initially mistaken regarding the basis of claimed damages for emotional harm. Putney's counsel also included incorrect statements in a declaration discussing the course of Putney's treatment that he prepared for one of her treating physicians to sign.[4] These mistakes highlight the importance of allowing PBC to perform an independent review of Plaintiffs' medical records, especially given the use of abbreviations, acronyms and technical terms in the records. The confusing and inconsistent nature of counsel's redactions is evidenced by counsel's numerous references to *unredacted* records in Plaintiffs' Brief in Opposition to respond to inconsistencies noted in the Motion to Compel.

---

[3] Plaintiff's May 28, 2008 Privilege Log, attached as Exhibit K to the Motion to Compel, states that Plaintiffs withheld medical records on the basis of a privacy privilege.

[4] See attached excerpts from deposition transcript of Gordon Herrald, M.D., showing that Dr. Herrald did not draft the declaration at Exhibit 1 to Plaintiff's brief in Opposition himself ("… if this was a document that I had written, I would have spelled my name correctly." Transcript at 9:7-8); Putney's counsel included incorrect statements in the declaration (32:6-9); and Dr. Herrald lacked personal knowledge of various statements in the declaration (33:13-36:5).

Plaintiffs cite no case recognizing a privacy privilege under federal common law, effectively conceding that PBC is entitled to discover relevant information even if Putney would prefer to keep it private. Even if a privacy privilege were recognized under federal common law, Putney would have waived her right to claim it by putting her physical and mental condition at issue. Putney also waived any asserted privilege by selectively disclosing portions of her medical records that contain the very type of information that Plaintiffs claim is not discoverable because it is private. Counsel claim that they redacted portions of Putney's medical records related to "the most private areas of a woman's life" and her "female anatomy," and yet offer no explanation as to why they did not redact information regarding previous pregnancies that did not go to term, vaginal bleeding, vaginal discharge and pelvic cramping. *See*, *e.g.*, *In re Qwest Communications Inter. Inc.* 450 F.3d 1139 (10th Cir. 2006) (surveying cases on waiver of attorney-client privilege and rejecting argument that defendants could selectively waive privilege without effecting a generalized waiver). Putney does not assert that the stipulated protective order already in place would be insufficient to prevent disclosure to third parties, and PBC respectfully contends that the existing protective order is sufficient to obviate Putney's concerns regarding disclosure of personal information.

### IV.   Conclusion

PBC respectfully requests that this Court order Putney to disclose copies of all of her medical records for the time period from five years before the termination of her employment with PBC through the present.

7

DATED this 9th day of July, 2008.

                           MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP


                           By:   s/ C. Adam Foster
                               Kristi L. Blumhardt, #24479
                               C. Adam Foster, #35969
                               1700 Broadway, Suite #1900
                               Denver, Colorado 80290-1901
                               Telephone:  (303) 293-8800
                               Fax: (303) 839-0036
                               E-mail: kblumhardt@mdmlawco.com
                               E-mail: afoster@mdmlawco.com
                               *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 9, 2008, a true and correct copy of the above was electronically filed with the Clerk of Court using the CM/ECF system and served to the following parties:

Rita Byrnes Kittle
Acting Supervisory Trial Attorney
Jennifer Randall
Trial Attorney
EEOC Denver Field Office
303 E. 17th Ave. Suite 510
Denver, CO 80203
rita.kittle@eeoc.gov
jennifer.randall@eeoc.gov

*Attorneys for Plaintiff EEOC*

Mark Joseph Berumen
Berumen Law Firm, P.C.
1450 South Havana Street
Suite 412
Aurora, CO 80012
markberumen@berumenlaw.com

*Attorney for LaTasha Putney (Intervenor)*

                                                                  By:   s/ C. Adam Foster
                                                                      Kristi L. Blumhardt, #24479
                                                                      C. Adam Foster, #35969
                                                                        1700 Broadway, Suite #1900
                                                                        Denver, Colorado 80290-1901
                                                                        Telephone:  (303) 293-8800
                                                                        Fax: (303) 839-0036
                                                                        E-mail: kblumhardt@mdmlawco.com
                                                                        E-mail: afoster@mdmlawco.com
                                                                        *Attorneys for Defendants*