Transcript of the Testimony of:

# GORDON HERRALD, M.D.
June 23, 2008
Volume:

**Equal Employment Opportunity Commission, et al.**
**v.**
**Professional Bureau of Collections, Inc., et al.**

**Lorraine L. Schaffer, R.P.R.**

*Lorraine L. Schaffer, R.P.R.*
**HANSEN & COMPANY**
**Registered Professional Reporters**
4155 East Jewell Avenue, Suite 1016
Denver, Colorado 80222
Phone (303) 691-0202 * Fax (303) 691-2444





Case 1:07-cv-02009-PAB-MJW  Document 109-1  Filed 07/09/08  USDC Colorado  Page 2 of 4

Equal Employment Opportunity Commission, et al. v.
Professional Bureau of Collections, Inc., et al.

GORDON HERRALD, M.D.
June 23, 2008

Page 9

1 states, Due to concern that Ms. Putney might have an
2 ectopic pregnancy, she was instructed to return for
3 further medical examination on August 28, 2006. Were
4 paragraph number 3 your words?
5     MS. RANDALL: Object to form. You can
6 answer.
7   A.  Well, if this was a document that I had
8 written, I would have spelled my name correctly. And I
9 know that it's been misspelled in a couple of
10 locations. It's been a while and I don't recall any of
11 the -- I don't recall how the statement was drafted.
12   Q.  (BY MS. BLUMHARDT) Okay.
13   A.  But it would not be my position as a physician
14 to draft a statement like this.
15   Q.  Okay. So the wording of paragraph number 3,
16 the words contained in that statement, that's not your
17 statement, correct?
18     MS. RANDALL: Object to form. You can
19 answer.
20   A.  I don't recall how the statements in this
21 declaration were derived.
22   Q.  (BY MS. BLUMHARDT) Okay. So you don't know
23 whether it is or is not your statement?
24     MS. RANDALL: Object to form.
25   A.  I'm just saying that it is not my position as

Page 10

1 an obstetrician/gynecologist to draft statements like
2 this.
3   Q.  (BY MS. BLUMHARDT) Okay. Paragraph number 4
4 states, At the conclusion of her August 22, 2006
5 appointment, Ms. Putney was given a note by this office
6 which she could show her employer confirming the
7 follow-up appointment on August 28, 2006. Do you see
8 that statement?
9   A.  Yes, I see it.
10   Q.  Did you give that wording or that statement to
11 anybody to include in this declaration?
12   A.  Frequently my role is to write a statement to
13 allow a patient to inform her employer that she needs to
14 be out for medical disability reasons, and these
15 statements are almost always handwritten on a
16 prescription pad or a piece of stationery. I don't
17 recall drafting this declaration, and I don't recall
18 composing the text.
19   Q.  Do you know who drafted this declaration?
20   A.  No.
21   Q.  Who presented it to you for signature?
22   A.  I don't recall.
23   Q.  Do you recall speaking with Ms. Putney about
24 this statement, the declaration?
25   A.  Pardon? I didn't hear you.

Page 11

1   Q.  Do you recall talking to Ms. Putney regarding
2 your declaration, Exhibit Number 36?
3   A.  I think it's reasonable to conclude that
4 there was some notification to me that this issue had
5 occurred. Consequently, I signed this document.
6   Q.  Do you recall actually speaking with
7 Ms. Putney about this declaration or the issue regarding
8 her pregnancy with PBC?
9   A.  I don't recall the details of the conversation
10 with her, but it's reasonable to conclude that there was
11 some conversation.
12   Q.  And why is that?
13   A.  I saw her twice, and I signed this document.
14 I was familiar with some of the issues in her case.
15   Q.  Okay. And what issues are you familiar with?
16   A.  I'm familiar with the fact that she went to
17 the emergency room, and after the emergency room visit,
18 she was referred to our office for follow-up. And I'm
19 familiar with the fact that she was pregnant. And I'm
20 familiar with the fact that it was an early pregnancy in
21 which we were uncertain as to whether or not the
22 pregnancy was a viable pregnancy. I'm familiar with the
23 fact that amidst the question of whether this was a
24 viable pregnancy or not, there was some question as to
25 whether or not the pregnancy could be an ectopic

Page 12

1 pregnancy.
2   Q.  Anything else?
3   A.  Anything else about what?
4   Q.  About the issues. You had said you were
5 familiar with the issues here, and so . . .
6   A.  When I found out that you wanted to take my
7 deposition, I familiarized myself with the case.
8   Q.  And how did you do that?
9   A.  Read the records.
10   Q.  Ms. Putney's patient record?
11   A.  Yes.
12   Q.  Okay. Anything else?
13   A.  No.
14   Q.  Did you ever speak with Ms. Putney's counsel
15 about the facts or issues relating to Ms. Putney's case
16 against PBC?
17   A.  No. At the onset of our morning here, I
18 didn't know who any of you were. I didn't know who was
19 who's counsel or advocate. I'm here as a basically
20 neutral individual to simply state facts as I interpret
21 them based on the medical record.
22   Q.  When you saw Ms. Putney, you stated -- the
23 first visit was on August 24th; is that correct?
24   A.  I remember some dates. I remember
25 August 22nd, August 24th, and maybe August 28th, but I

Case 1:07-cv-02009-PAB-MJW   Document 109-1   Filed 07/09/08   USDC Colorado   Page 3 of 4

Equal Employment Opportunity Commission, et al. v.
Professional Bureau of Collections, Inc., et al.

GORDON HERRALD, M.D.
June 23, 2008

Page 29

1 totally different from court reporting. We do not put
2 down everything we might have talked about.
3    Q.   (BY MS. BLUMHARDT) Okay. And then is that
4 your signature at the bottom?
5    A.   Yes.
6    Q.   Do you know what time she visited you on the
7 24th of August, in 2006?
8    A.   The time of her visit is not reflected in this
9 page that we've been talking about.
10   Q.   Is it reflected elsewhere in her chart?
11   A.   No doubt that there is a log of patient visits
12 for that day which most likely contains her name.
13 However, we have drop-ins and last minute appointments
14 which we try to accommodate.
15   Q.   So would it be fair to say if she were a drop-
16 in, there's a possibility her name would not be on that
17 log, but if she had a regular appointment, she should be
18 on the log?
19   A.   There may be somewhere a record of the time of
20 day she came in.
21   Q.   Okay. It wouldn't be contained in her chart
22 necessarily?
23   A.   It may not be in her chart.
24   Q.   The next page, which is marked EEOC 0145, are
25 these your notes from her visit on August 28, 2006?

Page 30

1    A.   Yes.
2    Q.   And again, if you would go through these lines
3 and read to us what your writing is here.
4    A.   Beneath the date of birth we have the date of
5 the visit, and it says, Patient here for HCG follow-up.
6 Then underneath that we see blood pressure, temperature,
7 weight. Beneath that we see S, Pregnant patient with
8 early pregnancy in ER the other day. Pains have
9 spontaneously, and it's implied there that's resolved,
10 disappeared. No bleeding. No nausea, vomiting.
11       Beneath that, Objective data. It says Q HCG.
12 I have written down two dates and two numbers. These
13 numbers represent quantitative HCG values for those
14 dates. There's an arrow there which shows how the
15 quantitative value of HCG has gone up from 371 to 880 in
16 just two days.
17       Beneath that we see A. The Assessment is,
18 Very early pregnancy. To the right of that, versus
19 threatened abortion versus ectopic. Now, I put versus
20 threatened abortion versus ectopic to indicate to anyone
21 else who read this, that we did not yet know if this was
22 a normal viable pregnancy developing in the uterus and
23 that we should not dispense with our concerns over the
24 possibility of an ectopic pregnancy.
25       Beneath that is the letter P. It says F/U,

Page 31

1 follow-up, Q HCG, to be done that day. Beneath that it
2 says, Appointment with Aurora Nurse Midwives, 1st OB
3 visit. That means that she would be given a visit with
4 a midwife on the occasion of her next visit here in the
5 office with the assumption that she had a normally
6 developing viable pregnancy.
7    Q.   Was an appointment set that day? I mean, did
8 you recommend, okay, here, come back in two days, in a
9 week, in a month, for that visit?
10   A.   Our office routine is that when a provider,
11 which means a physician or midwife, desires to see a
12 patient back, there is a special blue appointment slip
13 that we circle and write in a date sometimes. When I
14 say, we circle, I'm referring to an area on these
15 appointment slips which indicates that the patient could
16 come back for a first OB visit to see a midwife. And we
17 might even recommend or suggest a date for that return
18 visit.
19   Q.   How far down the road would that visit be?
20   A.   In a case like this, I would hope it would be
21 in the next week.
22   Q.   So in your declaration you talk about, At the
23 conclusion of her -- well, it says, August 22nd
24 appointment, Ms. Putney was given a note by this office
25 which she could show her employer confirming the

Page 32

1 follow-up appointment on August 28th. I guess first of
2 all, you didn't see her on August 22nd, correct? You
3 saw her on August 24th.
4    A.   As far as I know, on August 22nd, she was in
5 the emergency room.
6    Q.   So this statement is incorrect, Number 4?
7         MR. BERUMEN: Kristi, I think I'll point out
8 that's probably a typo on my part. I apologize for
9 that.
10   Q.   (BY MS. BLUMHARDT) That statement is
11 incorrect, correct?
12        MS. RANDALL: Object to form. You can answer.
13   A.   I don't know.
14   Q.   (BY MS. BLUMHARDT) If you didn't --
15   A.   Somebody gave her a note. She could have gone
16 to the emergency room and come over here and gotten a
17 note.
18   Q.   Well, when you say somebody gave her a note,
19 you have no way of knowing if anybody gave her a note on
20 the 22nd because you didn't see her on the 22nd,
21 correct?
22   A.   I don't recall seeing any records for me
23 seeing her on the 22nd.
24   Q.   So if you didn't see her, you have no way of
25 knowing whether a note was given to her on the 22nd or

Case 1:07-cv-02009-PAB-MJW   Document 109-1   Filed 07/09/08   USDC Colorado   Page 4 of 4

Equal Employment Opportunity Commission, et al. v.
Professional Bureau of Collections, Inc., et al.

GORDON HERRALD, M.D.
June 23, 2008

Page 33

1 not, correct?
2     A.  I think that it's reasonable to conclude that
3 I don't know if she got a note on the 22nd or the 24th
4 or the 28th.
5     Q.  Fair enough.  Somebody asked you to sign a
6 declaration saying that the office gave such a note, but
7 you don't know whether, in fact, that's true or not?
8         MS. RANDALL:  Object to form.  You can answer.
9     Q.  (BY MS. BLUMHARDT)  On any of the dates;
10 August 22nd, August 24th, or August 28th?
11        MS. RANDALL:  Same objection.
12    A.  Would you restate the question?
13    Q.  (BY MS. BLUMHARDT)  Sure.  You don't know
14 whether Ms. Putney was given a note on the 22nd.  You
15 just said that, correct?
16    A.  Correct.
17    Q.  And on August 24th, 2006, after she saw you,
18 you don't know whether anybody, in fact, gave her a note
19 for her employer for the follow-up visit on August 28,
20 2006, correct?
21        MS. RANDALL:  Object to form.  You can answer.
22    A.  There's a possibility that she was given a
23 note by a physician in the emergency room or she was
24 given a note by this office that I'm unaware of.
25    Q.  (BY MS. BLUMHARDT)  In other words, you are

Page 34

1 not personally aware of her being given any note
2 relating to any follow-up visit, correct?
3         MS. RANDALL:  Object to form.  You can
4 answer.
5     A.  One has to go back and look at records.  And I
6 don't recall seeing a photocopy of a note, and there was
7 no mention in these two clinic visit records of a note
8 being given to the patient.
9     Q.  (BY MS. BLUMHARDT)  And so you have no
10 personal knowledge of actually -- you didn't actually
11 write out a note for her to come --
12        MS. RANDALL:  Object to form.
13    Q.  (BY MS. BLUMHARDT) -- back with another
14 appointment?
15        MS. RANDALL:  Object to form.
16    A.  I don't recall whether I wrote a note.  Notes
17 for patients are commonplace in medical practice.  So
18 common that a record of a note or the reason why a note
19 is given or the contents of a note may not be recorded.
20    Q.  (BY MS. BLUMHARDT)  But either way, the
21 statement that is contained in the declaration under
22 paragraph number 4 is not correct?
23    A.  Well, I think that in reviewing this, one has
24 to conclude that when I signed it, I went along with the
25 assumption that she had been given a note by someone;

Page 35

1 although at this point, I don't recall who that someone
2 was.
3     Q.  And you have no personal knowledge of that
4 note --
5         MS. RANDALL:  Object to form.  You can answer.
6     Q.  (BY MS. BLUMHARDT) -- if it even exists.
7         MS. RANDALL:  Object to form.
8     A.  At this point, I do not know the contents of
9 the note.
10    Q.  (BY MS. BLUMHARDT)  Or even if one was given,
11 correct?
12        MS. RANDALL:  Object to form.
13    A.  Well, one has to assume that a note was given
14 because it's here in this declaration.
15    Q.  (BY MS. BLUMHARDT)  Well, if Ms. Putney's
16 attorneys drafted that because that's what they want it
17 to say, that doesn't mean that it's a fact, correct?
18        MS. RANDALL:  Objection, argumentative.
19    Q.  (BY MS. BLUMHARDT)  This was drafted by her
20 counsel, correct?
21    A.  I do not know who drafted this.
22        (Deposition Exhibit 38 was marked.)
23    Q.  Handing you what's been marked Exhibit 38, and
24 although it is heavily redacted, I'd like you to go
25 through it and let me know if any of these records are

Page 36

1 any of your records or from this office, if you can
2 tell.
3     A.  None of these records appear to have or
4 contain records that were from this office, Aurora Nurse
5 Midwives.
6         MS. BLUMHARDT:  That's all I have.  Thank
7 you.
8         MS. RANDALL:  I have some follow-up
9 questions.
10            EXAMINATION
11 BY MS. RANDALL:
12    Q.  Dr. Herrald, it's your testimony this morning
13 that you saw LaTasha Putney on two occasions?
14    A.  Yes.
15    Q.  And after reviewing your handwritten notes
16 which we have as part of Deposition Exhibit 37, you
17 believe the dates of those visits were August 24, 2006
18 and August 28, 2006?
19    A.  The records that I have looked at, which are
20 my records of clinic visits when she came into this
21 office, reflect those dates.
22    Q.  Okay.  If Ms. Putney was terminated on
23 September 1, 2006, would you agree that that termination
24 occurred after you treated her?
25    A.  She was terminated when?