IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-02009-WYD-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

LATASHA PUTNEY,

    Plaintiff Intervenor,

v.

PROFESSIONAL BUREAU OF COLLECTIONS, INC.

and

PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC.,

    Defendants.

---

**ORDER OVERRULING OBJECTION OF DISCOVERY ORDER
OF UNITED STATES MAGISTRATE JUDGE AND
DENYING PLAINTIFFS' MOTION PURSUANT TO FED. R. CIV. P. 56(f)**

---

This matter is before the Court on both Plaintiffs' Rule 72 Objection to Magistrate Judge Watanabe's Order of July 18, 2008 (docket #124), filed August 1, 2008 and Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 56(f) (docket #117), filed July 16, 2008. For the reasons stated below, Plaintiffs' Objection is overruled and Magistrate Judge Watanabe's Order dated July 18, 2008 is affirmed. Accordingly, Plaintiffs' Rule 56(f) motion is denied.

I.   BACKGROUND

By way of background, this is an action brought by the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC" or "Plaintiffs") alleging that Defendants violated Title VII by discharging Plaintiff Intervenor Latasha Putney due to her pregnancy. (First Am. Compl. at 1.) In response to the Plaintiffs' allegations, Defendants have asserted that Ms. Putney was discharged as a result of poor job performance.

On June 13, 2008, the Plaintiffs filed an Amended Motion to Compel 30(b)(6) Testimony (docket #74) seeking information about the process for documenting and storing information regarding employee hours worked and additional information in connection with employees disciplined for work performance. This motion was referred to Magistrate Judge Watanabe. He issued an Order on July 18, 2008, denying the motion. On August 1, 2008, Plaintiffs' filed their Rule 72 Objection to Magistrate Judge Watanabe's Order (docket #124), which is now pending before me.

> Magistrate Judge Watanabe found in his Order
>
> [t]hat substantially for the reasons stated in Defendants' response to Plaintiffs' Motion to Compel 30(b)(6) Testimony (Docket No. 105), defendants did not fail to prepare their designated corporate representative (Travis Justus, President of PBC) adequately to testify regarding two topics from plaintiffs' 30(b)(6) deposition notice. The court has reviewed the 30(b)(6) notice, the transcripts provided, and the arguments presented and concludes that defendants did not breach their obligation to produce, in good faith, a knowledgeable deponent who was competent to address the topics designated. Continuation of that deposition with regard to those topics is unnecessary . . .

(Magistrate Judge Watanabe's Order at 4-5.)

## II. PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE WATANABE'S ORDER DENYING THE AMENDED MOTION TO COMPEL

Plaintiffs argue in their Objection that Magistrate Judge Watanabe's order is clearly erroneous or contrary to law. Specifically, it is argued that the magistrate judge made clearly erroneous factual determinations and "ignored" evidence that the Defendants' Rule 30(b)(6) witness, Mr. Justus, relied on his own personal knowledge and failed to prepare to testify on behalf of the Defendant corporation regarding Topics 13 and 14 of the Plaintiffs' Rule 30(b)(6) deposition notice. (Objection at 2-3.) The Plaintiffs further claim that the witness was unable to answer basic questions with respect to the Defendants' timekeeping system or the circumstances under which employees have been disciplined for low productivity. (Objection at 3.)

Since Plaintiffs filed a timely Objection, I must review Magistrate Judge Watanabe's Order to determine whether it is "clearly erroneous or contrary to law" since the nature of the matter is nondispositive. Fed. R. Civ. P. 72(a). "An order is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Cook v. Rockwell Int'l Corp.*, 147 F.R.D. 237, 242 (D. Colo. 1993).

### A. Analysis

The Tenth Circuit has held that "[t]he law is well-settled that corporations have 'an affirmative duty' to make available as many persons as necessary to give 'complete, knowledgeable, and binding answers' on the corporations's behalf." *Ecclesiates 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007) (quoting *Reilly v. NatWest Mkt. Group Inc.*, 181 F.3d 253, 268 (2nd Cir. 1999).

1. Topic 13

First, I reject the Plaintiffs' contention that Magistrate Judge Watanabe "ignored Mr. Justus' inability to answer basic questions about Defendants' timekeeping system . . . [and] that he [Mr. Justus] did nothing to prepare for the specific areas of inquiry regarding the timekeeping system." (Objection at 11.) In Plaintiffs' Notice of Corporation Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), the relevant portion of Topic 13 reads as follows:

> The witness will be asked specifically to (a) describe any electronic database containing information regarding the time worked by these employees, including the variables in the database and a description of valid database entries; (b) describe how any such information is retained electronically or in paper form; (c) describe how the information is recorded; and (c) [sic] describe the computer hardware and software utilized to retain the information regarding time worked.

(Pls.' Notice at 5.)

In his June 3, 2008 deposition, Mr. Justus testified to the following in relation to Topic 13: "I bought this [timekeeping] system. I was involved in the purchase of the system at that time. And, it was a relatively reasonably-priced system that does not have the capability of storing information." (Justus Dep. 36:5-9, June 3, 2008.) Mr. Justus further stated that he has had conversations with Renee, Defendants' bookkeeper in the California office, regarding how long the timekeeping system retains information. (Justus Dep. 41:1-42:25.) "Renee did the background research on the time clock that we utilize, and I got briefed before it was purchased on how and what [sic] it works." (Justus Dep. 41:23-42:1.) Justus was informed by the payroll department "in preparing for this" that the data entered into the system is erased after it

is printed. (Justus Dep. 35:21-36:3.)

Justus further testified that the Defendants use the Lathem clock system. He explained that the system records time when an employee swipes his time card upon both arrival and departure. The time cards have a bar code on the back with each employee's name. The system is programmed with an employee number which it translates into Defendants' payroll. The system uses Lathem Easy Pay Software. The system is attached to a Dell computer, and the information is transferred to the computer and printed out. The data that is created when the employee swipes his time card is only stored on hard copy. Data can be printed at any time, but Defendants print it out at the end of the pay period prior to giving the payroll company the information to generate the paychecks. Data can be printed during the payroll period, but after the data is printed, it is erased. (Justus Dep. 34:1-35:25.) Payroll reports are stored in the Denver office, in a file cabinet labeled payroll time. (Justus Dep. 37:18-38:6.)

Justus testified that the hardware used to run the system is the time clock itself. The time clock does not require upkeep unless "it breaks and goes down." (Justus Dep. 39:5-22.) To print a time report, "you connect the computer to the software, the software connects to the clock. It has a print button. You press the print button, and it will print." (Justus Dep. 40:2-5.) Justus testified that he has "a reasonable working knowledge that it's [the data] not saved in any way, shape, or form. Our policy is only to save it in hard copy, because that's all we're required to do." (Justus Dep. 40:19-22.) The system has memory, but not enough to store a large amount of information. (Justus Dep. 45:2-9.)

Turning to my analysis, after carefully reviewing the deposition transcript, the relevant pleadings and Plaintiffs' Rule 30(b)(6) notice, I find that the witness, Mr. Justus, gave complete and knowledgeable answers regarding the items specifically listed in Plaintiffs' notice. I reject Plaintiffs' complaint that Mr. Justus was ill-prepared for the deposition because he did not know the version and date of the time clock software or where and how this data is stored. Mr. Justus explained how the system works and how the data is compiled and stored by the Defendants. He described with specificity the name of the software program and how it works in conjunction with the time clock. Further, he explained that the system does not have sufficient memory to store data electronically, thus the payroll records are stored in hard copy at the Defendants' Denver office. Moreover, it is my understanding that the Plaintiffs have received these hard copies as part of the discovery process. Therefore, I do not find that Magistrate Judge Watanabe's ruling was clearly erroneous or contrary to law. After reviewing the relevant evidence, I am not left with a definite and firm conviction that a mistake has been made. There is evidence to support that the Defendants adequately prepared their corporate representative, Mr. Justus, to testify as to Topic 13 in the Plaintiffs' notice. Accordingly, I overrule Plaintiffs' objection to Magistrate Judge Watanabe's Order in connection with Topic 13.

  2. <u>Topic 14</u>

Second, I reject Plaintiffs' claim that Magistrate Judge Watanabe ignored the fact that Mr. Justus did not have basic information about what employees were disciplined for low production and what disciplinary action was taken. (Pls.' Objection at 14.) In

Plaintiffs' Notice of Corporation Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), the witness was asked to testify to matters contained in the following relevant portion of Topic 14:

> The factual circumstances surrounding the discipline, up to and including termination, of employees working as Bill Collectors on the Dialer Group at Defendants' facility at 5295 DTC Parkway in Greenwood Village, Colorado for low productivity during 2006.

(Pls.' Notice at 5.)

In his June 3, 2008 deposition, Mr. Justus testified to the following in relation to Topic 14. He defined discipline as "talking to someone about productivity." (Justus Dep. 147:12-14.) "The employee review of August 3, 2006, '[a] lot of workers letting debtors off the phone, not typing and talking to people at the same time.' I think those are all discipline things." (Justus Dep. 147:23-148:1.) Mr. Justus further stated that he was aware that Ms. Putney was disciplined in 2006 for low productivity. In fact, Mr. Justus himself discussed the issue with Ms. Putney as did her manager. (Justus Dep. 145:22-146:4.) Tara Jones was also disciplined as a bill collector for low productivity in 2006. (Justus Dep. 146:5-10.) He further testified that "[i]n the collector training program, Armstrong, McNeil, all of them, was discussed in July about their productivity – and I believe Putney was one of the group – to stick with the standard pitch, training on how to get F and C, get firm PPA's, promise arrangements, et cetera . . . ." (Justus Dep. 147:16-22.) He further stated that "you can say that every single employee within our company has been disciplined at one time for productivity or for not getting enough work done or getting the job done." (Justus Dep. 148:3-6.) Mr. Justus testified that employees listed on Deposition Exhibit 8 received verbal warnings regarding their

productivity as bill collectors in 2006. (Justus Dep. 148:7-15.) Only three bill collectors in the last thirty years of work were "good enough . . . that you really wouldn't have to discuss their work with them." (Justus Dep. 151:4-7.) Mr. Justus went on to testify that he does not "require each collection manager to give me or tell me or put in writing about a warning they give to a collector on the dialer . . ." (Justus Dep. 149:8-11.) In preparation for the deposition, Mr. Justus stated that the Defendants conducted a search for employees who were terminated for low productivity in 2006. (Justus Dep. 149:1-150:16.)

Mr. Justus testified that during the summer of 2006, he was using the general manager's office which is located on the collection floor. Thus, he had a hands-on management role from approximately mid-June to September of 2006. "I was personally involved on the collection floor during the last three weeks of August more than I normally am, and that's why I remember those incidents and her [Putney] coming back late. I remember her [Putney] collection manager going, hey, get back to work on time." (Justus Dep. 163:9-14.) Mr. Justus also testified that he personally warned Ms. Putney about her tardiness and reviewed her personnel file in preparation for the Rule 30(b)(6) deposition. Mr. Justus further stated that he personally counseled Ms. Putney about her poor work performance. (Justus Dep. 162:11-165:7.)

Again, as I previously stated in my analysis in section II(A)(1) of this Order, based on my review of the deposition transcript, the relevant pleadings and Plaintiffs' Rule 30(b)(6) notice, I find that the witness, Mr. Justus, gave complete and knowledgeable answers regarding the items specifically listed in Topic 14 of Plaintiffs'

notice. I reject Plaintiffs' contention that Mr. Justus' testimony reveals a lack of basic knowledge about the practices and procedures on the production floor. Mr. Justus testified as to the company's definition of discipline. He further testified that all bill collectors on the dialer were disciplined in 2006 for low productivity. He testified and described specific instances as well. Mr. Justus spent hands-on time on the collection floor during Ms. Putney's employment and provided specific testimony regarding her poor work performance and subsequent discipline. Mr. Justus was personally involved in disciplining Ms. Putney. Accordingly, I do not find that Magistrate Judge Watanabe's ruling was clearly erroneous or contrary to law. After reviewing the relevant evidence, I do not have a definite and firm conviction that a mistake has been made. There is evidence to support the fact that the Defendants adequately prepared their corporate representative, Mr. Justus, to testify as to Topic 14 in the Plaintiffs' notice. Accordingly, I overrule Plaintiffs' objection to Magistrate Judge Watanabe's Order in connection with Topic 14. I find no error with this ruling.

III. PLAINTIFFS' RULE 56(f) MOTION

On July 1, 2008, the Defendants filed a motion for summary judgment (docket #100). In response, the Plaintiffs filed a motion to continue pursuant to Fed. R. Civ. P. 56(f). In the motion, the Plaintiffs seek a continuance in order to file their response to Defendants' summary judgment motion until the Court rules on the Plaintiffs' Amended Motion to Compel 30(b)(6) Testimony. Essentially, the Plaintiffs put forth the same arguments in this motion as they do in their objection to the magistrate judge's order.

Rule 56(f) reads as follows:

> When Affidavits Are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to the undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f). For the reasons stated in this Order, I reject Plaintiffs' arguments. I find that Plaintiffs have failed to show specified reasons that justify a continuance pursuant to Rule 56(f). Accordingly, I find that Plaintiffs' motion for a continuance pursuant to Fed. R. Civ. P. 56(f) should be denied.

IV. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Plaintiffs' Rule 72 Objection to Magistrate Judge Watanabe's Order of July 18, 2008 (docket #124), filed August 1, 2008, is **OVERRULED**. It is

FURTHER ORDERED that Magistrate Judge Watanabe's Order of July 18, 2008, is **AFFIRMED**. It is

FURTHER ORDERED that Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 56(f) (docket #117), filed July 16, 2008, is **DENIED**. In accordance therewith, the **Plaintiffs shall file their response to the Defendants' motion for summary judgment (docket #100) within (20) twenty days of the date of this Order.**

Dated: August 15, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge