IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-02009-PAB-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

and

LATASHA PUTNEY,

Plaintiff-Intervenor,

v.

PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC., and
PROFESSIONAL BUREAU OF COLLECTIONS, INC.

     Defendants.

_____

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**
_____

This matter is before the Court on Plaintiffs' Motion for Partial Summary

Judgment [Docket No. 95] and Defendants' Motion for Summary Judgment [Docket No.

100]. Plaintiff-Intervenor Latasha Putney claims that she was impermissibly terminated

by Defendants Professional Bureau of Collections of Maryland, Inc. and Professional

Bureau of Collections (collectively, "PBC") because she was pregnant. Ms. Putney and

plaintiff Equal Employment Opportunity Commission ("EEOC") move for summary

judgment on two of PBC's asserted affirmative defenses. PBC also seeks summary

judgment, but on plaintiffs' entire case. Although one of PBC's affirmative defenses

has been rendered moot, significant disputes over almost every critical fact in this

matter mean that the other affirmative defense, along with plaintiffs' discrimination

claim, must be decided by a jury.  Therefore, as explained in detail below, plaintiffs'
motion for partial summary judgment will be GRANTED in part and DENIED in part, and
defendants' motion must be DENIED.

## I.  BACKGROUND

Ms. Putney was employed as a "dialer" in PBC's collections department from
June 12, 2006 until her termination on September 1, 2006.  Defs.' Mot. for Summ. J.
[Docket No. 100] ("Defs.' Mot.") at 3 ¶ 4; Pls.' Resp. to Defs.' Mot. for Summ. J. [Docket
No. 138] ("Pls.' Resp.") at 2-3.  Dialers make calls seeking to collect on unpaid bills and
debts.  Beginning in August 2006, Ms. Putney was supervised by Chris Velasquez.
Defs.' Mot. at 3 ¶ 3; Pls.' Resp. at 2.  Mr. Velasquez reported to Travis Justus, the
president of PBC.  Defs.' Mot. at 2 ¶ 1; Pls.' Resp. at 2.

On August 22, 2006, Ms. Putney discovered she was pregnant.  Defs.' Reply in
Support of Mot. for Summ. J. [Docket No. 139] ("Defs.' Reply") at 18 ¶ 1.  The parties
dispute whether and when Ms. Putney informed Mr. Justus and Mr. Vasquez of her
pregnancy.  *Id.* at 18 ¶ 2.  In any event, on the morning of August 30, 2006, Ms. Putney
experienced some bleeding and believed she was having a miscarriage.  *Id.* at 18 ¶ 3.
Ms. Putney called in sick; it is disputed whether she told PBC of her pregnancy-related
concerns.  *Id.* at 18 ¶ 4.  Shortly after she returned to work two days later, she was
called into a meeting with Mr. Justus.  Defs.' Mot. at 7 ¶ 34; Pls.' Resp. at 2.  Although
the parties recall vastly different versions of this meeting, it is undisputed that, at the
end of the conference, Ms. Putney was fired.  Defs.' Mot. at 7 ¶¶ 34-35; Pls.' Resp. at

11 ¶¶ 34-35.  Her separation report listed the reason for termination as "low productivity levels."  Pls.' Resp., Ex. 3 at PBC 00010.

After her termination, Ms. Putney filed a charge of discrimination with the EEOC. The EEOC subsequently filed this lawsuit contending that PBC fired Ms. Putney because of her pregnancy.  Am. Compl. [Docket No. 2].  Ms. Putney sought and was granted the right to intervene.  *See* Application for Intervention [Docket No. 5], Minute Order [Docket No. 10].  Both sides eventually moved for summary judgment, with plaintiffs attacking specific defenses asserted by PBC, *see* Pls.' Mot. for Partial Summ. J. [Docket No. 95] ("Pls.' Mot."), and PBC challenging plaintiffs' claim in its entirety, *see* Defs.' Mot.[1]  These motions are fully briefed and ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.

---

[1]  The court struck PBC's original motion and supporting documentation, Docket Nos. 93 & 94, for failure to comply with the court's practice standards.  *See* Minute Order [Docket No. 98].  PBC refiled its motion but per the court's order did not re-submit its exhibits.  The exhibits remain at Docket No. 94.

3

*Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Id.*

## III.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs move for summary judgment on two of PBC's affirmative defenses.  First, they contend that PBC should not be able to shield itself from punitive damages by claiming "good faith" compliance with the antidiscrimination laws.  Pls.' Mot. at 8-11.  Second, they argue that PBC may not assert the so-called "after-acquired evidence" defense to limit damage amounts.  *Id.* at 12-15.  I consider those arguments in turn.

### A.   "Good Faith" Defense

In *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), the Supreme Court held that, in certain situations, companies may be vicariously liable for punitive damages based on discriminatory conduct of lower level management.  However, no such liability attaches where "the discriminatory employment decisions of managerial agents . . . are contrary to the employer's good faith efforts to comply with Title VII."  *Id.* at 545 (quotations and citation omitted).

> To avail itself of *Kolstad's* good-faith-compliance standard, an employer must at least 1) "adopt antidiscrimination policies;" 2) "make a good faith effort to educate its employees about these policies and the statutory prohibitions"; and 3) make "good faith efforts to enforce an antidiscrimination policy."

*McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1138 (10th Cir. 2006) (quoting

*Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1210 (10th Cir. 2000)).  The question of

good faith compliance is decided by the jury if there are material issues of disputed fact.

*See Winarto v. Toshiba Am. Elec. Components, Inc.*, 274 F.3d 1276, 1292 (9th Cir.

2001).  Thus, plaintiffs' motion to eliminate the defense can only be granted if there is

no genuine dispute over the relevant *Kolstad* facts.

Plaintiffs do not deny that PBC had antidiscrimination policies in place,[2] but

instead argue that the policies were insufficient because they did not expressly prohibit

pregnancy discrimination. In support of their argument, plaintiffs cite *Golson v. Green*

*Tree Financial Servicing Corp.*, No. 00-2365, 2002 WL 27104 (4th Cir. Jan. 10, 2002),

and *EEOC v. Siouxland Oral Maxillofacial Surgery Associates, LLP*, No. Civ 04-4215,

2007 WL 776321 (D.S.D. March 9, 2007).  However, while those cases considered an

employer's failure to expressly include pregnancy discrimination in its antidiscrimination

policy, neither case stands for the proposition that a policy that does not address a

specific discrimination category bars a *Kolstad* defense.  *Golson*, 2002 WL 27104, at

*3-4 (refusing to disturb jury award of punitive damages where policy did not mention

pregnancy discrimination and evidence showed that company did not offer training on

---

[2]  PBC's employee handbook contains the following "Equal Employment
Opportunity" statement:

> It is the policy of Professional Bureau of Collections, Inc. to grant equal
> opportunity to all qualified persons without regard to race, color, creed,
> age, sex, marital status, disability, religion, national origin, sexual
> preference, and to comply with all applicable anti-discrimination laws.

Pls.' Mot., Ex. 2 at PBC 00080.

Title VII compliance and was not committed to enforcing antidiscrimination policy); *Siouxland*, 2007 WL 776321, at *9 (refusing to grant summary judgment in *employer's* favor on punitive damage issue; noting that employer's Equal Employment Opportunity statement did not include pregnancy and that employee pointed to unwritten policy against hiring pregnant women).  These decisions are in line with Tenth Circuit precedent, which suggests that rather than presenting a categorical bar to a *Kolstad* defense, the relative strength and detail of an existent policy is a factor to be weighed in the good faith analysis.  *See EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1248 (10th Cir. 1999) ("[T]he *extent to which* an employer has adopted antidiscrimination policies . . . is important in deciding whether it is insulated from vicarious punitive liability.") (emphasis added).  It is for the jury to decide whether PBC's policy shows good faith compliance with the laws.

Plaintiffs also argue that PBC did not sufficiently educate and train its employees about pregnancy discrimination.  Plaintiffs point to testimony from PBC's president that the company has no "formal" equal employment opportunity training and relies on the "self-explanatory" nature of PBC's antidiscrimination policies.  Pls.' Mot., Ex. 3 at 170:5-171:9.  In response, PBC cites to testimony that the company provided ongoing, informal training, pointed out to its employees the equal employment opportunity guidelines posted in the office, and made sure it was following the antidiscrimination laws.  Am. Resp. to Pls.' Mot. for Partial Summ. J. [Docket No. 122] ("Defs.' Resp."), Ex. A at 225:5-226:10, Ex. D at 50:5-51:7.  Although not overwhelming, PBC's evidence is enough to create a question of fact.  I cannot find that PBC's training efforts were insufficient as a matter of law.  *Compare Wal-Mart Stores*, 187 F.3d at 1249 (no "good

6

faith" compliance where plaintiff's supervisor did not become aware of disability discrimination laws until three years after employee's termination and she and another manager received absolutely no training in employment discrimination).

In sum, PBC has adduced enough evidence to send the question of its good faith compliance to the jury.  Plaintiffs' motion for summary judgment on this affirmative defense must be denied.

### B.   After-Acquired Evidence Defense

Plaintiffs also challenge PBC's invocation of the "after-acquired evidence" defense, derived from the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995).  In *McKennon*, the Court held that an employee is not barred from bringing a discrimination suit where information is discovered after the employee's termination that would otherwise have justified discharge.  However, the Court did limit the type of damages such a person may recover; reinstatement and front pay are not available, *id.* at 362 ("It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds."), and backpay may only be awarded for the time before discovery of the new information, *id.* ("The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.").  *See also Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009) ("[A]fter-acquired evidence of misconduct by the former employee during the time of

employment, while not relieving the employer of *liability*, may be relevant to the issue of *damages*.") (emphasis in original).

PBC contends that during this litigation it discovered that Ms. Putney had been searching for jobs on company time and dealing drugs on company property.  Pls.' Mot. at 4 ¶ 13, 7 ¶ 36.  Plaintiffs deny this conduct occurred, but argue that, even if it did, there is no evidence that such conduct would have justified termination.  *See Perkins*, 557 F.3d at 1145 (noting that the first step in the *McKennon* inquiry is for the employer to establish "'that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge'" (quoting *McKennon*, 513 U.S. at 362-63)).  I need not resolve this issue.  Plaintiffs have stipulated that they are not seeking reinstatement or front pay and that they only seek backpay up to September 1, 2007, which is undisputably before PBC discovered this new information.  Pls.' Mot. at 14-15.  As the after-acquired evidence defense would have no bearing on either liability or damages, there is no reason for PBC to advance it at trial.  Summary judgment on this point is granted.[3]

## IV.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PBC has also moved for summary judgment, arguing that plaintiffs do not have sufficient evidence to suggest that Ms. Putney was terminated because of her pregnancy.  A pregnancy discrimination claim is analyzed the same as other Title VII

_____

[3]  PBC argues that I should not find the after-acquired evidence defense moot because evidence of Ms. Putney's alleged misconduct may be admissible at trial for impeachment or other reasons.  Defs.' Resp. at 20-21.  My ruling on the applicability of the defense is not a ruling on admissibility of any evidence; that issue is better left for a motion in limine or for resolution at trial.

8

claims, following the familiar *McDonnell Douglas* burden shifting framework.  *Atchley v.*

*Nordam Group, Inc.*, 180 F.3d 1143, 1148-49 (10th Cir. 1999).  The first stage requires

a plaintiff to present a *prima facie* case of discrimination.  "She must show: (1) she is

within the protected class; (2) she was doing satisfactory work; (3) she was discharged;

and (4) her position remained open and was ultimately filled by a nonpregnant

employee." *Id.* at 1148.[4]  This showing is "not onerous."  *McCowan v. All Star*

*Maintenance, Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).

Assuming the *prima facie* burden is met, a defendant must produce evidence

showing a "legitimate, nondiscriminatory reason" for the plaintiff's termination.  *Atchley*,

180 F.3d at 1148.  The burden then shifts back to the plaintiff to show either that

"pregnancy was a determinative factor in the defendant's employment decision" or that

"the defendant's explanation for its action was merely pretext."  *Id.* at 1148-49.

Importantly, a showing of pretext is enough; the plaintiff need not have direct evidence

that pregnancy was the actual reason for her termination.  *Randle v. City of Aurora*, 69

F.3d 441, 451 (10th Cir. 1995) ("[A] showing of pretext *is* evidence which allows a jury

to infer discriminatory intent.  Consequently, because a jury may find illegal

---

[4]  The correct articulation of the fourth prong is a matter of some dispute.  In
*Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000), the
Tenth Circuit surveyed the confusion over whether this prong merely requires the
terminated employee's position to have remained open or whether, as stated in *Atchley*,
the position must have been filled by a person of non-protected status.  *Id.* at 1227-29.
The court concluded that "a plaintiff alleging discriminatory discharge ordinarily need
not show that a person outside of the protected class was hired to fill his former position
in order to make out a prima facie case of discrimination," *id.* at 1229, suggesting the
*Atchley* formulation is incorrect.  The issue is immaterial, however, as PBC concedes
that it filled Ms. Putney's position with a non-pregnant employee.  Defs.' Mot. at 10.
Thus, for the purposes of this Order, I adopt the *Atchley* characterization.

discrimination upon nothing more than a prima facie case and pretext, such a showing at the summary judgment stage is sufficient to get the case to the jury.") (emphasis in original); *see also Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008) ("To defeat . . . summary judgment, 'the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief.'" (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997))).

### A.   *Prima Facie* Case

There is no question that Ms. Putney is within a protected class, that PBC discharged her, and that PBC replaced her with a non-pregnant employee.  Defs.' Mot. at 10.  The only element in dispute is whether her work was "satisfactory."  Again, the showing required here is minimal.  "[A] plaintiff may make out a prima facie case of discrimination in a discharge case . . . by her own testimony that her work was satisfactory, even when disputed by her employer."  *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991), *abrogated on other grounds by Randle*, 69 F.3d at 441.  Among other things, plaintiffs point to evidence that shortly before her termination, Ms. Putney was told she was being considered for a promotion and did not need any performance help. Pls.' Resp. at 28.  This is sufficient to make a *prima facie* showing of satisfactory work.

### B.   Pretext

PBC has proffered several reasons for Ms. Putney's termination: low production numbers, a poor and insubordinate attitude (including confrontations with management, disruptions in the office, and resistance to criticism), and tardiness to work.  Defs.' Mot.

at 12.  Plaintiffs do not challenge that these are legitimate, non-discriminatory reasons

for termination.  Rather, they claim that the reasons are pretextual.  "A plaintiff

demonstrates pretext by producing evidence of 'such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

reasons for its action that a reasonable factfinder could rationally find them unworthy of

credence and hence infer that the employer did not act for the asserted

non-discriminatory reasons.'"  *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308

(10th Cir. 2005) (quoting *Morgan*, 108 F.3d at 1323).  "[A]s a general rule, an employee

must proffer evidence that shows each of the employer's justifications are pretextual."

*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000).

       Before examining each asserted reason, I must address a few threshold issues.

First, plaintiffs suggest that the temporal proximity between Ms. Putney's pregnancy

and her termination is by itself sufficient to support an inference of pretext. Pls.' Resp.

at 30-31. The Tenth Circuit has squarely rejected this argument, and I must as well.

*Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009) ("[T]emporal

proximity alone is not sufficient to defeat summary judgment by showing that the

employer's proffered reason is actually pretext for retaliation.").

       Second, plaintiffs claim that PBC's changing reasons for Ms. Putney's

termination demonstrate pretext. Pls.' Resp. at 32.  Although this legal principle is

accurate, *see, e.g.*, *Zisumbo v. McCleodUSA Telecomm. Servs., Inc.*, No. 04-4119,

2005 WL 3120640, *7 n.5 (10th Cir. Nov. 23, 2005) ("[A] change in explanation,

accompanied by evidence that an original justification is false, could allow a jury to

conclude that a second justification is likewise false."), it does not apply here.  Plaintiffs

11

note that PBC first stated it terminated Ms. Putney for "low productivity," then called it

"poor performance," and now have introduced a claim for tardiness.  Pls.' Resp. at 32.

But understood in the context of this case, these are not contradictory reasons; instead,

they are different articulations of a similar problem.  PBC did not abandon or repudiate

its initial reasons, but rather expanded upon those reasons as time went on.  PBC's

explanations are not so conflicting as to rise to the level of pretext.

Finally, PBC argues that no improper motive could exist because Mr. Justus did

not know that Ms. Putney was pregnant at the time of her termination.  Defs.' Mot. at

12, 14.  But this fact is in serious dispute.  *Compare id.*, Ex. A at 188:3-7 (Mr. Justus'

testimony that he did not know Ms. Putney was pregnant) *with* Pls.' Resp., Ex. 10 at

132:12-18 (Ms. Putney's testimony that before her termination she told Mr. Justus that

she thought she was having a miscarriage).[5]  A jury must determine whether and when

_____

[5] PBC objects to the consideration of this – and other – deposition testimony of
Ms. Putney, which was given after discovery closed and after PBC filed its motion for
summary judgment.  PBC argues that she testified to many "new" facts that had not
been disclosed during discovery and therefore is attempting to "sandbag" PBC.  Defs.'
Reply at 27-32.  I cannot accept this argument.

In late February 2008, Ms. Putney responded to interrogatories asking for "all
reasons" Ms. Putney believed she was discriminated against.  She explained the basic
facts surrounding her termination, including that she "informed [PBC] of her pregnancy
in August 2006" and that "[w]hile Ms. Putney's termination form states that she was
terminated for low production levels, the evidence does not show that Ms. Putney had
low production levels."  Defs.' Reply, Ex. N at 2.  Ms. Putney's deposition was
scheduled to take place a couple of months later, but was continued in light of a dispute
over a protective order.  [Docket No. 112.]   The parties reset the deposition for mid-
August, in part to accommodate PBC's counsel's vacation schedule.  [Docket No. 112.]
In the interim, and consistent with the court's scheduling order, PBC filed its motion for
summary judgment.  It did not request a continuance of the dispositive motion deadline
in order to file its motion after Ms. Putney's deposition.

At her deposition, Ms. Putney provided a more detailed explanation of the events
surrounding her termination.  PBC argues that these details are new, untimely, and
should be stricken.  But the facts are not "new" in the sense of introducing some

Mr. Justus became aware of the pregnancy.

With these preliminary matters disposed of, I turn to a consideration of whether there is evidence that the proffered reasons for Ms. Putney's termination were pretextual.  Because the facts surrounding each justification are heavily disputed, summary judgment must be denied.

### 1.  Low Productivity

PBC contends that Ms. Putney was terminated, in part, because of poor productivity.  Specifically, PBC argues that the number of collection calls she was making each day – a metric of performance – was falling during the last few weeks of her employment.  Defs.' Mot. at 13-14; *see also id.*, Ex. A at 196:15-213:17.  Plaintiffs respond with an expert report purporting to show that, while her calls per hour might have been declining, Ms. Putney's actual telephone contact with debtors was increasing.  Pls.' Resp., Ex. 4, Figs. 2-4.  Making contact, as opposed to leaving a message, is necessary to collect money, a factor identified by PBC executives as "equally important" to the number of calls made.  *Id.*, Ex. 13 at 32:7-18.  Indeed, one of Ms. Putney's co-workers testified that, if a collector was bringing in money, hitting the calls-per-hour target was not so important.  *Id.*, Ex. 9 at 44:1-45:9.  Plaintiffs' expert's data also shows that Ms. Putney's call volume was similar to that of two other

---

heretofore unknown event or contradicting earlier statements.  Nor is it fair to call the testimony "untimely."  Although the deposition occurred outside of the discovery period, that was by agreement of the parties.  [Docket No. 112.]  It may be that PBC learned new details at the post-motion deposition, but this is a result of the scheduling logistics of this case rather than any "fail[ure] to provide information or identify a witness" during discovery.  Fed. R. Civ. P. 37(c)(1) (barring use of such late-disclosed information).  I will not strike or disregard Ms. Putney's deposition testimony.

employees – Ms. Armstrong and Ms. McNeil – who were identified by Mr. Velasquez, the collections supervisor, as top performers.  Pls.' Resp., Ex. 4, Figs. 1, 5; *see also id.*, Ex. 13 at 109:9-23.

PBC argues that plaintiffs' export report, which examines calls per hour, contact with debtors, promises to pay, etc., presents productivity data in a manner different from that used by PBC and therefore should be disregarded.  Defs.' Reply at 33-35.  However, Mr. Velasquez himself explained that he looked at both calls per day and calls per hour, and that he also evaluated money collected.  Pls.' Resp., Ex. 13 at 31:10-32:18.  Moreover, while I am mindful that courts do not "sit as a super-personnel department that second-guesses [a] company's business decisions," "'evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination.'"  *Tyler*, 232 F.3d at 813-14 (quoting *Fischbach v. District of Columbia Dep't. of Corr.*, 86 F.3d 1180, 1183 (D.C.Cir. 1996)).  Data suggesting Ms. Putney's performance was not as poor as PBC contends is apposite to the pretext analysis.

But even without the expert report, summary judgment would be inappropriate.  Ms. Putney testified at her deposition that about a week before her termination – during the time PBC claims her performance was slipping – her supervisors told her that she did not need any additional help or training and that they were considering promoting her to a new position.  Pls.' Resp., Ex. 10 at 64:17-66:9.  Not surprisingly, PBC challenges Ms. Putney's version of events, *see* Defs.' Reply at 24-25, but that simply underscores the genuine dispute over Ms. Putney's performance.  Plaintiffs have

14

produced sufficient evidence to cast doubt on PBC's productivity rationale; this issue must go to the jury.

### 2. Poor Attitude

PBC also claims that Ms. Putney's termination was justified in light of her poor attitude, including her disruptive and insubordinate behavior. Defs.' Mot. at 12-13. In fact, PBC claims that Ms. Putney's rude and defiant behavior during her final meeting with Mr. Justus was the last straw and led directly to her dismissal. *Id.* at 6-7 ¶¶ 33-35. Once again, these facts are contested. PBC's own reply brief makes this point clear, routinely "disput[ing]" plaintiffs' "dispute[s]" over PBC's claimed facts showing bad attitude. *See* Defs.' Reply at 10 (disputes over whether Ms. Putney was singled out for reprimand for talking too much); 11-12 (disputes over whether there had been any negative interactions with her supervisor); 12 (disputes over whether Ms. Putney had been disruptive on the day of her termination); 13-14 (disputes over what was said during the termination meeting). Given this conflicting evidence, the questions of whether Ms. Putney was, in fact, disruptive and insubordinate and whether any such behavior justified termination cannot be determined on summary judgment.

### 3. Tardiness

Finally, PBC argues that Ms. Putney was often tardy to work, pointing to time cards that show she was late on several occasions. Defs.' Mot. at 11, *see also id.*, Ex. G. In response, plaintiffs note that company policy was to document tardiness, Pls.' Resp., Ex. 12 at 16:5-25, that other employees (who were not terminated) had multiple such reports in their files, *id.*, Ex. 3 at PBC 00220-22, PBC 00893-94, PBC 00903, but

that Ms. Putney never received any such written warnings or write-ups, *id.*, Ex. 7 at 162:8-11.  The absence of such documentation, coupled with the fact that other employees repeatedly written up for tardiness were apparently not terminated, is sufficient evidence to suggest that this reason was pretextual.

Having adduced evidence both of a *prima facie* case of discrimination and of pretext, plaintiffs are entitled to take this case to trial.

## V.  CONCLUSION

Nearly all of the material facts in this case are in dispute, with the parties painting two vastly different pictures of the circumstances surrounding Ms. Putney's discharge. It will be up to the factfinder to decide whose version to believe.  Accordingly, it is

ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Docket No. 95] is GRANTED in part and DENIED in part.  Plaintiffs' Motion for Partial Summary Judgment is granted as to PBC's after-acquired evidence defense, but is denied as to PBC's defense of good faith compliance.  It is further

ORDERED that Defendants' Motion for Summary Judgment [Docket No. 100] is DENIED.

DATED February 22, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

16